TOWAR COTTON MILLS *v.* ABBEY.

1. TRUSTS—PAROL TRUSTS—BURDEN OF PROOF.
   In a suit to enjoin an execution levy and sale of land deeded to plaintiff and to quiet plaintiff's title thereto, where it appears that the land was deeded to plaintiff for the purpose of heading off an attachment on a claim against the grantor, the burden is on plaintiff to establish its claim that said deed was made pursuant to and in fulfillment of the terms of a parol trust.

2. SAME—EQUITY—EVIDENCE—SUFFICIENCY.
   Where said land was taken by grantor in payment for plaintiff's stock sold by him, for which he was under obligation to account in "cash or its equivalent," plaintiff's testimony to the effect that in accepting and holding said land he was not acting as its agent, *held*, to negative its claim that he was holding said land for it in pursuance of a parol trust, and to preclude equitable relief.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 21, 1921. (Docket No. 41.) Decided October 3, 1921.

Bill by the Towar Cotton Mills, Incorporated, against Perley Abbey and others to enjoin an execution levy and sale. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Alfred S. Frost* (*Burns & Hadsell,* of counsel), for plaintiff.

*Harry C. Howard,* for defendants.

SHARPE, J. The plaintiff is a corporation organized under the laws of the State of Maine. It procured authority to do business, and also for the sale

of its stock, in Michigan. Its principal place of business in this State is at the city of Niles, where it operates a plant for the manufacture of cotton belting and cotton fabrics. In October, 1917, it entered into a written contract with Dingeman Binkhorst, doing business as D. Binkhorst & Co., of Kalamazoo, under which Binkhorst was authorized to dispose of its stock on a commission. (This contract will hereafter be more particularly referred to.) He accepted deeds of conveyance, mortgages on real estate, bonds and other stocks and securities in payment or exchange for stock. The defendant Abbey was employed by Binkhorst as a salesman of stock. On August 13, 1918, he began a suit in attachment to recover for services so rendered and, acting under the writ issued, the sheriff attached certain real estate, the title to which was in Binkhorst. Notice of the levy was filed with the register of deeds on the same day. The suit proceeded to judgment. A writ of execution was issued thereon and a levy made upon the attached real estate. A warranty deed of the lands so attached was made by Binkhorst and his wife to Henry M. Towar, dated August 13, 1918. Its execution was acknowledged by Mrs. Binkhorst at Kalamazoo on the same day and by Binkhorst at Toledo, Ohio, on the 14th. It was recorded on September 24, 1918. The plaintiff corporation filed this bill to enjoin the sale under the execution, to remove the cloud on the title occasioned thereby and to quiet the title to plaintiff in the lands levied upon. On the hearing, the trial court made a decree dismissing the bill.

It is the claim of the plaintiff that, while the title to the real estate was in Binkhorst at the time of the levy, it in fact belonged to the company; that its right thereto became fixed and settled by the deed from Binkhorst. This involves a consideration of the

evidence.   The written contract with Binkhorst is not in the record.   The testimony relative to it was admitted on plaintiff's undertaking to subsequently produce it.   The proofs were closed and the case submitted without its production.   As defendants' counsel discusses and seems to rely on some of its provisions, we feel constrained to consider it.

Henry M. Tower, now vice-president and treasurer of the company, and who, at the time the contract was made, was its secretary and treasurer, testified that Binkhorst was not acting as its agent, that—

"We had a contract with him to buy our stock at a certain price below par, which was his commission for selling the stock, his brokerage or commission, and he had to give us a certain price. * * * Binkhorst was to pay us ninety for our stock.  If he sold it for ninety-one, it would be up to him.  He would get one per cent.  If he sold it for ninety-nine, he would get nine per cent. * * *

"*The Court:* He had to sustain a loss if there was a loss?

"*A.* He had to, yes, but he was very careful to see that there wasn't any.  Ultimately there was a loss, because he did not sell off this in the lawsuit."

He further testified that there was a parol agreement relative to such deals:

"This was an agreement to dispose of any real estate, subject to our approval, that he might take in payment of the capital stock of our company,"

and that all such deals were reported to the company. The conveyances and securities were all taken in Binkhorst's name.   He further testified:

"Mr. Binkhorst was never in our employ.  We had a contract with him to sell stock. * * * When he took anything which was not cash or its equivalent, he would go on later and convert it into cash, at the best terms he could.  He always had to pay us the same amount for this stock, which was in accordance with the contract. * * * If for example, he took

stock, he would sell it, and then have it reissued.   If it didn't come up to the price Mr. Binkhorst took it at, he had to make good to us, under his contract. *   *   * The deed was for properties he had on hand in his name, to give him credit for them, at the amount he took them in at, whether they were worth that or not.   We took them in at the price he figured on, and we have already got our money on two of the places now.   Such properties as we have already sold, we are ahead on, and have given him credit for them against the balance outstanding.   It was true on the real estate, that he was charged with the stock he sold, and was credited with what he turned back to us on it, but it was not true of everything else.   He got credit for his commission. *   *   * We claim he owes us, and he claims we owe him. *   *   * We kept a book account with Binkhorst. *   *   * When we issued stock, we would charge Binkhorst himself, so that he would have the power to sell the stock."

He further testified that the company procured authority from the securities commission for the sale of its stock and he knew that under such authority the company had no right to dispose of it "for anything but cash, or the equivalent of cash."   That all such sales were reported to the commission as for cash or "under the general caption of securities."

"Q. You say that he, where he got title to these properties that were mortgageable, would mortgage them and send the proceeds to you?   And thereby the Towar Company escaped any liability on the note or mortgage,—the liability was Binkhorst's?

"A. Yes.

"Q. You would not have the Towar Cotton Mill Company give a mortgage on these because there would be the personal responsibility on the note covered by it?   That was another reason why it was convenient to have it in Binkhorst's name?'

"A. That was it, yes."

We agree with the trial court in the conclusion reached by him.   At the time of the levy of the at-

tachment, the title to the real estate was in Binkhorst. Standing alone, his deed to plaintiff would but be evidence of a purpose on his part to prefer plaintiff as a creditor. The deed was secured by plaintiff after it knew of Abbey's claim, in fact, we think it may fairly be said, for the purpose of heading off the attachment. The burden is on plaintiff to establish the fact that it was made pursuant to and in fulfillment of the terms of a parol trust. Mr. Towar alone testified relative to it. He several times stated that Binkhorst was not acting as an agent for the company, and yet plaintiff's claim rests on the fact that he was so acting and took title to this real estate in himself as a matter of convenience in disposing of it. Binkhorst sold plaintiff's stock for whatever price he chose and took anything he pleased in payment for it. It was charged to him on the books of the company. The remittances made were not sent by him or received by the company as proceeds of the sale of real estate but as payments on stock so charged to him. Mr. Towar admits that the company had no right to dispose of its stock for other than "cash or its equivalent," and that to do so would violate the authority to sell conferred on it by the securities commission.

Under the record, it seems clear to us that the plaintiff is not entitled to equitable relief.

The decree is affirmed, with costs to the defendant Abbey.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.